UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 3:21-cr-87 (VAB) |
| v. | |
| JESSICA MARTINEZ | July 23, 2025 |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The defendant Jessica Martinez willfully participated in a months-long conspiracy and scheme to defraud the State of Connecticut out of public campaign funds. As part of that scheme, she approved false campaign filings, allowing the campaign to fraudulently obtain an $84,450 grant, which it used to win the primary. When the State was alerted to Martinez's deception and while the campaign was seeking another $95,710 grant for the general election, she lied to election officials to both conceal and continue the fraud. After federal agents launched an investigation, Martinez then lied to them. Finally, despite multiple warnings and after taking an oath to testify truthfully, Martinez then lied to a federal grand jury. This defendant's sustained and repeated instances of fraud and false statements reflect a disrespect for the law and a delusion that crimes are justified if committed in support of the right political candidate. A term of imprisonment is necessary not just to punish this defendant and deter similar conduct, but to demonstrate that the election and public campaign finance system are expected to be fundamentally fair.

### I. OFFENSE CONDUCT

Martinez pled guilty to lying before a federal grand jury, in violation of 18 U.S.C. § 1623. Presentence Report ("PSR") ¶¶ 74–79. The reason she committed that crime was to cover up her participation in a conspiracy and scheme to defraud for the benefit of Dennis A. Bradley, Jr.'s 2018 campaign for the 23rd State Senate District. PSR ¶ 44. Martinez's conduct involved a series of misrepresentations (at least some of which were made at Bradley's behest), including

filing false campaign records with the State Elections Enforcement Commission ("SEEC"), lying under oath to SEEC investigators, and making false statements to Federal Bureau of Investigation ("FBI") agents. PSR ¶¶ 53–60, 67–73. Thus, Martinez's conspiracy, fraud, and attempted coverup provided the background and motivation for her eventual perjury.

### A. The Conspiracy and Scheme to Defraud

Along with others, Martinez, Bradley, and Tina Manus—a senior member of the Bradley campaign who is charged separately—conspired and perpetrated a scheme to defraud SEEC, the Citizens' Election Fund, and the State of Connecticut out of $179,850 in Citizens' Election Program ("CEP") grants for Bradley's 2018 state senate campaign.[1] PSR ¶ 45. The CEP is a voluntary public election-financing program under which candidates can apply to SEEC for State grants to fund their primary and general election campaigns. PSR ¶ 42. In 2018, the maximum CEP primary grant for a candidate in Bradley's district was $84,450 and the maximum CEP general election grant was $95,710. PSR ¶ 46.

Bradley began his 2018 State Senate campaign in February 2018 and planned to announce his candidacy at a March 15, 2018 party at Dolphin's Cove, a restaurant in Bridgeport. PSR ¶ 47. CEP rules imposed a $2,000 limit on personal expenditures by a participating candidate, but Bradley spent at least $5,597.31 of his own money on that campaign party. *Id.* Rather than admit his prohibited use of personal funds and be disqualified from the CEP program, Bradley, together with Martinez, Manus, and others, engaged in criminal conduct to trick SEEC into awarding the campaign undeserved grant money. PSR ¶ 48.

---

[1] Bradley was indicted with Martinez; his trial has been delayed numerous times and has not yet been rescheduled. *See United States v. Dennis A. Bradley, Jr.*, 3:21-cr-87 (VAB). In 2021, Manus pled guilty to conspiracy to commit wire fraud and publicly entered into a cooperation agreement; her sentencing has been continued until after Bradley's trial. *See United States v. Tina Manus*, 3:21-cr-174 (VAB).

On March 15, 2018, Bradley and Martinez attended the campaign party at Dolphin's Cove. PSR ¶ 49. During that event, Bradley made a speech and announced his candidacy for State Senate. *Id.* With the knowledge and approval of Bradley and Martinez, Manus and at least one unindicted co-conspirator solicited campaign contributions at the party. *Id.* At least eight donors made contributions and signed contribution cards, which were accurately dated March 15, 2018. *Id.*

As campaign treasurer, Martinez was responsible for collecting such contribution cards and donated money from campaign volunteers. PSR ¶ 50. The night of the party, at approximately 11:24 p.m., Manus sent a text message to Martinez about contribution cards collected at Dolphin's Cove which read, "Hey girl I found two more forms in my purse!!!" *Id.* On March 17, 2018, Manus sent a text message to Martinez which read, "Hey! What's Dennis got for contributions so far do you know off hand?" *Id.* Approximately ten minutes later, Martinez responded "$690[.]" *Id.* Upon further inquiry by Manus, Martinez clarified, "$290 from the night of the event! Well all that was handed to me." *Id.* As of that date, the only Bradley campaign event had been the Dolphin's Cove party. *Id.* Indeed, in an October 23, 2020 interview at the United States Attorney's Office in Bridgeport, accompanied by her attorney and without proffer protection, Martinez admitted that she knew that campaign fundraising had taken place at the time of the party, knew that Manus had brought contribution cards, saw Manus walking around with such cards, and sat at a table and counted donations collected at the party. *Id.* Thus, as of March 15, 2018, Martinez knew that the Dolphin's Cove event had been a campaign event paid for with excessive personal funds, disqualifying the campaign from the CEP grant program; she nonetheless chose to participate in the conspiracy and scheme to trick SEEC. PSR ¶ 44.

Likewise, to conceal the true nature of the Dolphin's Cove party, Manus and another campaign volunteer altered and falsified donors' contribution cards so that none were dated March 15, 2018. PSR ¶ 51.

For the same reason, Bradley's campaign made several false financial filings with SEEC with the knowledge and approval of Bradley and Martinez. PSR ¶ 52.

    a. First, on April 10, 2018, Bradley's campaign filed with SEEC its first Itemized Campaign Finance Disclosure Statement, which covered March 15, 2018. To conceal conduct that would have disqualified Bradley from receiving a CEP grant, this filing misstated and omitted certain information related to the Dolphin's Cove party. PSR ¶ 53. Specifically, that filing (i) omitted that Bradley had held a campaign event on March 15, 2018 at Dolphin's Cove restaurant, (ii) omitted that Bradley had incurred approximately $6,307 in expenses for that campaign event, (iii) omitted that Bradley had already paid approximately $710 of those campaign expenses with personal funds, (iv) omitted that Bradley had accepted multiple qualifying contributions on March 15, 2018, and (iv) misrepresented the dates of those March 15, 2018 contributions. *Id.*

    b. Later that same day, Bradley's campaign filed with SEEC an amended Itemized Campaign Finance Disclosure Statement covering March 15, 2018. PSR ¶ 54. This filing misstated and omitted the same information as the original filing. *Id.*

    c. On May 25, 2018, Bradley's campaign filed with SEEC its second amended Itemized Campaign Finance Disclosure Statement covering March 15, 2018. PSR ¶ 55. This filing misstated and omitted the same information as the original filing and the first amendment. *Id.*

d. On June 8, 2018, Bradley's campaign filed its third amended Itemized Campaign Finance Disclosure Statement covering March 15, 2018. PSR ¶ 56. This filing misstated and omitted the same information as the prior three versions. *Id.*

Thus, four versions of Bradley's Itemized Campaign Finance Disclosure Statements contained the same misstatements and omissions about the March 15, 2018 campaign event. PSR ¶ 57. In her October 23, 2020 interview at the United States Attorney's Office, Martinez admitted that she knew that campaign fundraising had taken place at the time of the Dolphin's Cove party but was not reflected in the campaign's filings with SEEC. *Id.* Thus, Martinez has admitted to participating in an attempt to dupe SEEC to obtain campaign grants. *See* PSR ¶¶ 44.

13. On or about May 24, 2018, Bradley and Martinez caused the campaign to voluntarily apply for a $84,140 CEP primary grant by filing a CEP Affidavit and a CEP Application with SEEC. PSR ¶ 58. Each of those filings were certified and signed by Martinez and contained misrepresentations:

a. In the CEP Affidavit, Martinez falsely swore and certified that she had "abided by…the provisions of the Program governing use of the candidate's personal funds" and "abided by the Program's expenditure limits." PSR ¶ 59.

b. In the CEP Application, Martinez falsely certified and swore that the campaign had not "accepted any contribution or contributions that exceed or exceeds in the aggregate that applicable contribution limit set forth in Chapter 157 of the Connecticut General Statutes" and had "agree[d] to abide by…requirements for campaign finance disclosure statements and recordkeeping." PSR ¶ 60.

On May 27, 2018, Bradley texted Martinez, Manus, and other campaign officials, "Can we all meet tomorrow at 10:00am? My office[.]" PSR ¶ 61. Martinez responded, "Yes!!" *Id.*

Bradley then directed Martinez, "Please bring all the forms, files, checks, etc let's go over everything. Thanks Jess!" *Id.* That meeting occurred on May 28, 2018. *Id.* The following day, Bradley texted Martinez, Manus, and other campaign officials:

> Great meeting yesterday team. I truly appreciate everyone's efforts. As this campaign goes on there will be more and more challenges. Let's remember all great things come with sacrifice. Let's make a commitment that we might be in storm today but tomorrow through our continued faithfulness the brightest day will come. *Id.*

Manus responded, "Don't worry Dennis if you go to jail you are a lot cuter than [City Councilman Ernie Newton, who had been imprisoned for a federal crime]--u will be ok and Ill make sure ur commissary always has enough so you can make toilet wine and mufungo." PSR ¶ 62.

On July 10, 2018, in reliance on the false and misleading information contained in Bradley's and Martinez 's filings, SEEC awarded the Bradley campaign a $84,140 CEP primary grant. PSR ¶ 63.

After issuing that grant, SEEC began investigating a citizen complaint regarding Bradley's campaign, including the March 15, 2018 event at Dolphin's Cove. PSR ¶ 64.

On August 14, 2018, Bradley won the Democratic primary. PSR ¶ 65.

On August 28, 2018, Bradley and Martinez caused a campaign form to be filed with SEEC in an attempt to obtain a $95,710 CEP general election grant. PSR ¶ 66. Once again, this was an example of Martinez's participation in the attempt to trick SEEC into awarding an undeserved campaign grant. *See* PSR ¶¶ 44. SEEC eventually denied that grant and Bradley won the general election. *Id.*

## B. Lying Under Oath to SEEC

While SEEC was conducting its investigation and the campaign's application for a $95,710 general election grant was still pending, Martinez lied under oath to SEEC investigators in furtherance of the conspiracy and scheme, in particular, to conceal the fraudulent misstatements and omissions made in the campaign's earlier filings. PSR ¶ 67.

On October 12, 2018, Martinez falsely testified to SEEC that, among other things:

a. attendees at the Dolphin's Cove campaign event were "absolutely not" solicited for campaign contributions on behalf of the Bradley campaign;

b. there were no contribution cards present at the Dolphin's Cove campaign event;

c. no one ever gave Martinez contribution cards from the Dolphin's Cove campaign event; and

d. Martinez had done nothing to promote the Dolphin's Cove campaign event. PSR ¶ 68.

In her October 23, 2020 interview at the United States Attorney's Office, Martinez admitted that she had known at the time of her testimony to SEEC that campaign contributions had been solicited at the Dolphin's Cove event, that she had seen and received contribution cards, and that she had promoted the party. PSR ¶ 69. Martinez admitted that she had knowingly lied to SEEC. *Id.* She explained that she had done so because she knew that she had broken the rules, was afraid of being fined by SEEC, and wanted to avoid the notoriety that would have accompanied any admission of wrongdoing. *Id.* According to Martinez, before testifying to SEEC, she consulted Bradley, who influenced her decision to provide false testimony to SEEC. PSR ¶ 70. Specifically, Bradley told Martinez to falsely claim that there had been no fundraising at the Dolphin's Cove event. *Id.* Thus, Martinez admitted to agreeing to participate in a scheme to obtain money from SEEC via misrepresentations. *See* PSR ¶¶ 44.

### C. False Statements to Federal Investigators

During the federal investigation in 2020, Martinez lied to Special Agents of the Federal Bureau of Investigation ("FBI"). PSR ¶ 71. Specifically, on March 10, 2020, Martinez falsely told FBI Special Agents that no money was raised for the Bradley campaign at the Dolphin's Cove party. PSR ¶ 72. Martinez continued that she had done nothing wrong and was not protecting anyone. *Id.* Then, her October 23, 2020 interview at the United States Attorney's Office, Martinez admitted that she had knowingly lied to the FBI in the prior interview and that fundraising had taken place at the Dolphin's Cove party. PSR ¶ 73. Thus, Martinez's lies to the FBI were another instance of conduct undertaken in furtherance of the conspiracy to defraud. *See* PSR ¶¶ 44.

### D. Perjury Before the Grand Jury

During the federal investigation in 2020, Martinez also lied to a federal grand jury in furtherance of the conspiracy and scheme. PSR ¶ 74.

On September 23, 2020, Martinez testified before a federal grand jury sitting in New Haven that was investigating the Bradley campaign. PSR ¶ 75.

The grand jury was investigating, in relevant part, whether the Dolphin's Cove party (i) was to benefit and raise funds for Bradley's campaign, or (ii) was a client and community appreciation party hosted by Bradley's law firm, BDK (which is what Bradley had previously told SEEC), and as a result whether there was a violation of federal law related to the Bradley campaign's participation in the CEP. PSR ¶ 76.

While testifying under oath, Martinez knowingly made the following false declarations regarding that material matter:

    a. "Dolphin's Cove had zero to do with me and the campaign. Dolphin's Cove was a BDK event, the law firm's event, thanking the community…."

  b. "There was no fundraising there. There was no fundraising there."

  c. "The campaign did not begin. That was a BDK event." PSR ¶ 77.

In October 23, 2020 and November 24, 2020 interviews at the United States Attorney's Office in Bridgeport, accompanied by her attorney and without proffer protection, Martinez admitted that she had knowingly lied to the grand jury. PSR ¶ 78. Specifically, in her October 23, 2020 interview, Martinez admitted that she knew at the time of her grand jury testimony that she had promoted the Dolphin's Cove party, that it was a campaign event, that there had been fundraising at the party, that she had seen contribution cards there, and that people had given her campaign donations there. *Id.* According to Martinez, before testifying, she consulted with Bradley, who influenced her decision to provide that false testimony to the grand jury. PSR ¶ 79. Specifically, Bradley told Martinez to falsely claim that there had been no fundraising at the Dolphin's Cove event. *Id.* Once again, by her own admission, Martinez agreed with Bradley to undertake a criminal act to cover up the scheme to defraud SEEC. *See* PSR ¶¶ 44.

## II. DISCUSSION

The sentencing factors under 18 U.S.C. § 3553(a) call for a sentence that includes a term in prison.

### A. The Sentencing Guidelines

The Government and Probation agreed at the time that the PSR was originally drafted that Martinez's Guidelines total offense level was 12 and her criminal history category was I, which would result in an advisory sentencing range of 10–16 months' imprisonment and a fine of $5,500–$55,000. PSR ¶¶ 7, 157, 170. The defense has raised two points.

#### 1. Substantial interference with the administration of justice

Martinez disagrees with the PSR's Guidelines calculation, in that she disputes the three-level enhancement under U.S.S.G. § 2J1.3(b)(2), which applies because her perjury resulted in

- 9 -

"substantial interference with the administration of justice." Application Note 1 defines that phrase to include "unnecessary expenditure of substantial government…resources." *See United States v. Mangano*, No. 22-861, 2025 WL 485381, at *4 (2d Cir. Feb. 13, 2025) ("All that is required is a specific finding that the defendant's conduct resulted in an unnecessary expense of substantial resources."); *United States v. Jones*, 900 F.2d 512, 521–522 (2d Cir. 1990) (requiring "specific finding that [the defendant's] perjury had resulted in any substantial expenditure of governmental resources").

Here, Martinez's perjury required the Government to undertake substantial additional investigative steps and unusual expense. Law enforcement agents and U.S. Attorney's Office personnel were required to perform otherwise unnecessary investigative work, which helps explain the eight months that elapsed between Martinez's September 23, 2020 grand jury appearance and the May 24, 2021 indictment. That work included locating, interviewing, and eliciting grand jury testimony from two additional civilian witnesses to disprove Martinez false testimony and establish the facts of what occurred at Dolphin's Cove on March 15, 2018. Moreover, securing the appearance of one of those witnesses posed a unique and significant challenge, insofar as he was a U.S. Naval Reserve officer on deployment in Qatar; to make him available to a New Haven grand jury during the COVID pandemic, the Government and the Navy had to arrange for the witness's military leave, re-assignment, testing, quarantine, and international travel. The Government expended significant time making logistical arrangements and more than $1,500 for the witness's commercial airfare from Qatar.[2] While the Government does not itemize all the costs of its investigation, its months of additional investigation plus the added expense of securing

---

[2] Documentation of this expense was provided to Martinez's counsel on June 24, 2025, and can be supplied to the Court upon request.

this witness's testimony are just the sort of "unnecessary expenditure of substantial government…resources" that constitutes "substantial interference with the administration of justice," triggering a Guidelines enhancement. *See Mangano*, 2025 WL 485381, at *4 (affirming enhancement where district court found defendant "bled government resources," based on "additional investigations" and additional trial witnesses); *United States v. DeSalvo*, 26 F.3d 1216, 1224 (2d Cir. 1994) ("The government need not particularize a specific number of hours expended by government employees…." (cleaned up)).

### 2. Acceptance of responsibility

The Government notes that Martinez's recent conduct potentially calls into question her acceptance of responsibility.

Martinez has lately denied participation in the conspiracy and scheme to defraud, which is relevant conduct under U.S.S.G. § 1B1.3. PSR ¶¶ 45, 74; Dkt. #292-3 (Counsel's July 3, 2025 Ltr. to Probation, at 1–2). As the PSR reflects, that denial is belied by the evidence and by Martinez's prior admissions, in which she acknowledged that she "knew that campaign fundraising had taken place at the time of the party, knew that Ms. Manus had brought contribution cards, saw Ms. Manus walking around with such cards, and sat at a table and counted donations collected at the party, "knew that campaign fundraising had taken place at the time of the Dolphin's Cove party but was not reflected in the campaign's filings with SEEC," and "had knowingly lied to SEEC and had done so because she knew that she had broken the rules, and was afraid of being fined by SEEC." PSR ¶¶ 50, 57, 69. The PSR concluded that, "[w]hether or not Ms. Martinez was directly involved in the planning of the event, the probation officer determined *she became a knowing participant in the fraud conspiracy during the March 15, 2018 event*, *and subsequently*

*made repeated efforts to cover up the conspiracy*, including her false testimony to law enforcement and a grand jury." PSR ¶ 44 (emphasis added).

Because Martinez did not persist in her false denials in her sentencing memorandum, the Government does not think it necessary to invoke its right under the Plea Agreement oppose a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. However, the Government reserves the right to revisit its determination should Martinez repeat her false denials in any additional filing or at her sentencing.

> **B.** **Nature and Circumstances of the Offense, Seriousness of the Offense, Respect for the Law, Just Punishment, and Adequate Deterrence**

The nature and circumstances of this offense are serious, and just punishment, respect for the law, and the need to send a deterrent message each call for a term of imprisonment.

Perjury before the grand jury is a particularly serious crime that should be met with serious consequences. *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012) ("[P]erjury before a grand jury, like perjury at trial, is a serious criminal offense…."); *United States v. Norman*, 776 F.3d 67, 78 (2d Cir. 2015) ("Punishment for perjury—*i.e.*, for willfully giving false testimony concerning a material matter—is essential to the integrity of our trial system." (cleaned up)). The testimonial process that is part of judicial and grand jury proceedings relies on witnesses respecting their oath to give truthful testimony. *See United States v. Remington*, 208 F.2d 567, 570 (2d Cir. 1953) (rejecting "an assumption that perjury, although a crime, is an inevitable occurrence in judicial proceedings"); *Ray v. United States*, No. 04 CV 0013 (ILG), 2004 WL 1243173, at *2 (E.D.N.Y. Apr. 5, 2004) ("[I]t cannot be gainsaid that having taken the oath, the fear of being indicted for perjury may inhibit false testimony and serve the integrity of the judicial process."). A witness who is willing to betray that oath and provide false information subverts the entire enterprise and risks unjust results and proceedings. False testimony wastes the court's or grand jurors' time,

and diverts attention and resources from the relevant inquiry, requiring unnecessary efforts to correct the witness's lies. That is exactly what happened here; although Martinez did not succeed in concealing her past campaign finance fraud (as she and Bradley had hoped), her false testimony forced the Government to prolong and extend its investigation in order to put the truth before the grand jury through evidence and other witnesses.

Moreover, Martinez's sentence should also take into account that her motive was to conceal other criminal conduct, namely, a conspiracy and scheme to fraudulently steal campaign grants from the State. Rather than merely "misguided decisions," Def's Mem. at 2, the years-long duration and repetition of Martinez's participation and acts in furtherance of those crimes demonstrate that she made a willful decision to defraud the State and then engage in a coverup to avoid the inevitable consequences. *See, e.g.*, PSR ¶ 69 ("Martinez admitted that she had knowingly lied to SEEC and had done so because she knew that she had broken the rules, and was afraid of being fined by SEEC.").

Although Martinez touts her history of service to Bridgeport, her criminal conduct inflicted important harms on her community. The voters in the 23rd State Senate District suffered, insofar as the 2018 election was tainted by Bradley cheating to obtain an $84,140 public campaign grant, which he used to win the Democratic primary, making election a foregone conclusion in Bridgeport. In addition, Martinez's conduct damaged the public's perception of the fairness of Connecticut's publicly funded election finance process, which relies on the honesty of campaign treasurers like Martinez in the absence of a robust investigation and enforcement mechanism. Moreover, the Court should recognize that Martinez's conduct occurred in a city that has suffered a sustained history of electoral misconduct, and seems to confirm the public's worst fears about the integrity of Bridgeport's political candidates and elections.

In light of Martinez's lies under oath, sustained participation in a fraud, success in impacting the election, and contribution to electoral cynicism in Bridgeport, a term of imprisonment would be just, reflect the seriousness of her offense, promote respect for the law, and send a persuasive deterrent message.

C.     **Defendant's History and Characteristics**

In deciding on a sentence, the Court should consider all the circumstances of Martinez's life, including her personal history and service.[3]

On the other hand, the Court should equally consider Martinez's criminal behavior. She participated in a sustained scheme to steal money from the State, repeatedly lying in campaign filings, to election officials, to investigators, and to the grand jury under oath in order to execute that scheme and conceal it after the fact. She is not the victim in this situation, and the Court's sentence should send a message to her and the wider community that the law applies to everyone, regardless of their position or past.

---

[3] Martinez includes a letter by Dr. Kathryn Thomas, a licensed psychologist but also a part-time Mitigation Research and Writing Attorney at the Federal Defender's Office. *See* Def. Mem. Ex. F. In that latter role, Attorney Thomas met with Martinez in October 2023 to administer a test of Attention-Deficit/Hyperactivity Disorder. *Id.* at 1. Following that initial meeting, Attorney Thomas met with Martinez "on a weekly or biweekly basis to provide support and discuss coping skills, for a total of approximately 60 one-hour meetings." *Id.* While Attorney Thomas does not purport to offer a mental health diagnosis in this case, when considering her letter, the Court should be aware of the possibility that her dual roles give rise to a conflict of interest. Connecticut Rule of Professional Responsibility 1.7 ("[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest," which exists if "there is a significant risk that the representation of one or more clients will be materially limited by … a personal interest of the lawyer."). Here, someone with Attorney Thomas's dual roles—an attorney with the Federal Defender's Office and a clinician with specialized training and qualifications—has a potential incentive to conform her comments concerning a defendant's mental health to the defense's sentencing arguments. The Government has previously raised Attorney Thomas's potential conflict with the Federal Defender's Office and notes it here to offer the Court context in which to consider her letter.

D. **Unwarranted Sentencing Disparity**

A sentencing court's responsibility to craft a sentence based on the particularized crime and defendant make it difficult to compare sentences between cases absent complete factual detail. That said, over approximately five years, 40% of defendants superficially similar to Martinez (*i.e.*, subject to the sentencing under the same offense Guideline) received a carceral sentence. PSR ¶ 159. Thus, there is no reason to believe that a term of imprisonment in this case would represent a sentencing disparity at all, much less an unwarranted one.

* * *

For the above reasons, the Government recommends that the Court impose a term of imprisonment.

Respectfully submitted,

DAVID X. SULLIVAN
UNITED STATES ATTORNEY

      /s/
JONATHAN N. FRANCIS
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. phv05083
jonathan.francis@usdoj.gov
157 Church Street, 25th Floor
New Haven, CT   06510
Tel.: (203) 821-3700

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 23, 2025 a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/
JONATHAN N. FRANCIS
ASSISTANT UNITED STATES ATTORNEY